UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ROBERT HOFFMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>vs.<br><br>KEITH D. WEINER & ASSOC. CO. L.P.A.,<br><br>    Defendant. | Case No.: 19-cv-19<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hon. Lynn Adelman |

Plaintiff Robert Hoffman, through counsel, submits the following brief in opposition to Defendant Keith D. Weiner & Assoc. Co., L.P.A.'s ("Weiner") Motion to Dismiss.

## INTRODUCTION

Plaintiff's Complaint alleges violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA"). The Complaint alleges that Weiner mailed Plaintiff, and a class of similarly situated individuals, debt collection letters that falsely represented that the alleged debts Weiner was collecting were accruing interest and other charges.

Weiner's conduct is both generally deceptive and unfair, *see,* 15 U.S.C. §§ 1692e, 1692e(10), and 1692f, and specifically prohibited by the FDCPA and WCA, 15 U.S.C. §§ 1692e(2)(a), 1692e(5), 1692e(10), 1692f(1), and Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L). Indeed, the FDCPA expressly requires that debt collectors state the amount of the debt accurately and without deceptive language.

1

**FACTUAL BACKGROUND**

Plaintiff is an individual who resides in the Eastern District of Wisconsin. (Dkt. No. 1 ("Compl."), ¶ 3). Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3), and a "customer" as defined by the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought from him was incurred for personal, family, or household purposes. (Compl., ¶¶ 4, 5). Weiner, an Ohio-based law firm, is a "debt collector" as defined in the FDPCA and the WCA because it regularly collects debts owed to others after those debts enter default. (Compl., ¶¶ 6-13).

On or about October 11, 2018, Weiner mailed an initial form debt collection letter ("Letter 1") to Plaintiff regarding an alleged debt owed to "MJT Bolivar LLC," which arose from Plaintiff's residential lease agreement. (Compl., ¶¶ 14-19). The header in Letter 1 states that the "Amount Due" is $477.50, and the body in Letter 1 states that, "[a]s of the date of this letter, you owe the balance stated above. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. Please contact us to verify the amount due before making a payment for the full balance."[1] Letter 1 further states that, although Weiner is a law firm, "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account." [2]

---

[1] This statement is colloquially referred to as "*Miller* language." *See, Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Notably, Weiner modified the *Miller* language to remove any reference to "late charges." (Compare Compl., ¶ 22).

[2] This statement is part of what is colloquially referred to as a "*Greco* disclaimer." *See, e.g., Greco v. Trauner, Cohen, & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005). The Second Circuit held that the law firm effectively disclaimed attorney involvement with the prominent statement: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact our office, our client may consider additional remedies to recover the balance due." *Greco*, 412 F.3d at 361.

2

A little more than a month later, on November 16, 2018, Weiner mailed a "follow-up" debt collection letter ("Letter 2") to Plaintiff regarding the alleged MJT Bolivar LLC debt. The header in Letter 2 likewise states that the "Amount Due" is $477.50, and the body in Letter 2 also contains the modified "*Miller* language." Just like Letter 1, Letter 2 also contains a *Greco* disclaimer.

On January 3, 2019, Plaintiff filed a Complaint against Weiner, alleging that using *Miller* language was false, deceptive, and misleading under the circumstances because the debt was not actually accruing "interest or other charges" when Weiner mailed its letters to Plaintiff. (Dkt. No. 1). Weiner filed the instant Motion to Dismiss and its supporting brief on February 13, 2019. (Dkt. Nos. 6, 7).

## ARGUMENT

I. **LEGAL STANDARDS**

A. **Standard on a Motion to Dismiss**

A claim must be supported by "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see, Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). A court must "accept as true all well-pleaded facts alleged, drawing all possible inferences in the plaintiff's favor." *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but must only exhibit "facial plausibility" by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff does not need to prove her case at the pleading stage. *Brooks*, 578 F.3d at 581; *Olson v. Champaign City*, 784 F.3d 1093, 1103 (7th Cir. 2015).

"A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *3 (E.D. Wis. Sept. 29, 2017) (quoting *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)). "Requests for relief as to part of a claim are a matter for summary judgment." *Id.* (citing Fed. R. Civ. P. 56(a)). Generally, all a plaintiff must do to survive a motion to dismiss a complaint alleging an FDCPA violation is plausibly allege that the debt collector's letter is materially misleading or confusing. *E.g., Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1059 (7th Cir. 1999) ("A contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6).").

### B. FDCPA Standards

Congress passed the FDCPA, in part, "to eliminate abusive debt collection practices by debt collectors," whether or not there is a valid debt. 15 U.S.C. § 1692(e); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997). The FDCPA is a strict liability statute that broadly prohibits unfair collection methods and deceptive or misleading statements, and requires debt collectors provide certain information. 15 U.S.C. §§ 1692e, 1692f, 1692g; *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015).

Whether a debt collector's conduct violates the FDCPA is judged from the standpoint of a hypothetical "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is objective—

whether the plaintiff or any class members were misled is not an element of a cause of action. *Bartlett,* 128 F.3d at 499. The FDCPA prohibits false, deceptive, or confusing statements and the freedom from material misrepresentations is a legally protected interest that confers standing whether a consumer was personally deceived or not. *Bartlett*, 128 F.3d at 499; *Pogorzelski*, 2017 U.S. Dist. LEXIS 89678, at \*6-9. "The FDCPA in essence 'enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'" *Pogorzelski*, 2017 U.S. Dist. LEXIS 89678, at \*8 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)). The unsophisticated consumer does not read letters idiosyncratically. The critical question in evaluating whether a debt collection letter ultimately violates the FDCPA is if the letter would similarly confuse or mislead "a significant fraction of the population[.]" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

      The Seventh Circuit has enumerated three categories of FDCPA cases alleging false or deceptive statements: 1) statements that are plainly not misleading or deceptive on their face (summary judgment for Defendant); 2) statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer (Plaintiff needs extrinsic evidence to prevail on summary judgment); and 3) statements that are plainly deceptive communications (summary judgment for plaintiff without extrinsic evidence)). *Ruth v. Triumph P'Ships*, 577 F.3d 790, 800-01 (7th Cir. 2009).[3] Although not necessarily relevant at the

---

[3] The complaint in this action alleges violations of 15 U.S.C. §§ 1692e and 1692f. The standards for determining whether an FDCPA complaint states a claim apply under 15 U.S.C. §§ 1692e, 1692f, and

5

pleadings stage, the Seventh Circuit has also explained that consumer testimony may satisfy the extrinsic evidence requirement in certain cases. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009); *see also, Al v. Van Ru Credit Corp.*, No. 17-cv-1738-JPS, 2019 U.S. Dist. LEXIS 6321, at *7-8 (E.D. Wis. Jan. 14, 2019).

At this stage, the Court need only consider whether the letter is "patently not misleading and would not mislead any reasonable consumer, even an unsophisticated one[.]" *Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d 870, 875 (N.D. Ind. Jan. 17, 2017). "The Seventh Circuit 'ha[s] repeatedly cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on a Rule 12(b)(6) motion because district judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects.'" *Al v. Van Ru Credit Corp.*, No. 17-cv-1738-JPS, 2018 U.S. Dist. LEXIS 70321, at *3-4 (E.D. Wis. Apr. 26, 2018) (alteration in original) (quoting *McMillan*, 455 F.3d at 759). Thus, "it is open to a plaintiff, in any but the clearest case, to present objective evidence of confusion, for example the results of a consumer survey." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004).

### C. WCA Standards

Plaintiff's WCA claims are analyzed according to the same "unsophisticated consumer" standard as his FDCPA claims. *See, e.g., Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15 (Wis. 2010) (analyzing WCA debt collection claims and adopting the Seventh Circuit's standards and reasoning as expressed in *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)). Thus, the WCA and FDCPA claims should be analyzed together. *See, e.g.,*

---

1692g. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 760 (7th Cir. 2006) ("We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis.").

*Bloodworth v. United Credit Serv.*, No. 15-cv-502-LA, 2016 U.S. Dist. LEXIS 49129, at *2-3 (E.D. Wis. Apr. 12, 2016) ("Generally, conduct which violates § 1692e(5) also violates Wis. Stat. § 427.104(1)(L), and I will therefore analyze the claims together."); *see also, Eichman v. Mann Bracken, LLC*, 689 F. Supp. 2d 1094, 1101 (W.D. Wis. 2010). Indeed, Weiner itself does not distinguish between the federal and state law claims, and this Court need only determine whether Plaintiff states a WCA claim at this procedural posture. *See, e.g., Eichman*, 689 F. Supp. 2d at 1101 ("I am satisfied that plaintiff has alleged sufficient facts to state a claim under the FDCPA and the Wisconsin Consumer Act. Because defendants generally argue that their conduct does not violate any of the sections of the statutes cited by plaintiff, I will not determine what specific provisions of either Act that plaintiff may sue under."); *Al v. Van Ru Credit Corp.*, No. 17-cv-1738-JPS, 2019 U.S. Dist. LEXIS 6321, at *10 (E.D. Wis. Jan. 14, 2019) (concluding that "because there are triable issues on the FDCPA claims, and Defendant has not shown that the WCA claim should be treated in a different fashion, the WCA claim will also survive to trial.") (citing Wis. Admin. Code § DFI-Bkg. 74.16).

## II. WEINER'S MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY.

Weiner presents one theory to support its dismissal. (Dkt. No. 7 at 7-11) According to Weiner, the modified *Miller* language is not false, deceptive, or misleading under the circumstances because Weiner modified it to remove the reference to "late charges" and "Weiner is legally entitled to, and routinely does, collect post judgment interest." (Dkt. No. 7 at 10). Weiner relies primarily on *Washington v. Portfolio Recovery Assocs., LLC*, 211 F. Supp. 3d 1041 (N.D. Ill. 2016), to support its contention that the statement which says the balance may increase because of interest is not misleading when the debt collector is legally entitled to post-judgment

7

interest.  As explained below, *Washington* and the other authority on which Weiner rely are wholly out of place here because, unlike in *Washington*, the alleged debt Weiner was collecting had not been reduced judgment, so Weiner had no right to post-judgment interest when it mailed its letters.  *E.g., Veach v. Sheeks*, 316 F.3d 690, 694 (7th Cir. 2003).

### A. Weiner's reference to "interest and other charges" is confusing and misleading because it suggests the debt is already accruing interest and other charges.

Weiner's letter is deceptive and misleading to the unsophisticated consumer because it implies that Weiner or the creditor is or may add interest and other charges even though these charges could not accrue until after Weiner obtained a judgment against Plaintiff on behalf of MJT Bolivar.  Weiner's vague, unexplained reference to interest and other charges does not explain the basis for these charges, nor does it explain how and when they might accrue.  Moreover, in light of the fact that Weiner's own letters explain that Plaintiff's account had not even been reviewed by an attorney, the suggestion that the unsophisticated consumer would understand the *Miller* language to imply that Weiner might seek *post-judgment* interest and fees is especially misleading.

### 1. It is deceptive and unfair to use *Miller* language in a dunning letter when the debt is not actually accruing interest and other charges.

A dunning letter that includes *Miller* language even though the amount is not actually increasing is deceptive and misleading.  Weiner's brief quotes *Miller* at length, (Def.'s Br. at 7-8), but misses the crux of the decision, which is to create safe harbor language that ensures consumers will not be confused "*in cases like this where the amount varies from day to day*." (Def.'s Br. at 8) (citing *Miller*, 214 F.3d at 876).  Recognizing that collection agencies could weaponize the *Miller* language to deceive consumers into expediting payment by falsely

8

implying the debt was accruing interest, late fees, or other charges, the Seventh Circuit proactively limited a debt collector's safe harbor protection to instances where "the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation)." *Miller*, 214 F.3d at 876; *see also, Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 370 (7th Cir. 2018) (quoting *Miller*, 214 F.3d at 876). Indeed, the Seventh Circuit explained just a few years after deciding *Miller* that the *Miller* language is to be used when "the debt collector is trying to collect the listed balance plus the interest *running on it* or other charges[.]" *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004). On the other hand, "[i]f the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the 'balance' due, stating that the creditor 'has assigned your delinquent account to our agency for collection,' and asking the recipient to remit the balance listed—and stopping there, without talk of the 'current' balance." *Chuway*, 362 F.3d at 949.

After deciding *Chuway*, the Seventh Circuit explained that a debt collector does not necessarily mislead the consumer to believe that interest *will* accrue any time it states that interest *may* accrue because the unsophisticated consumer is likely to understand such references to be "truisms." *See,* Def.'s Br. at 10-11 (quoting *Taylor*, 365 F.3d at 574). But, notably, the debts in *Taylor* were credit card accounts on which the creditor could have charged interest, the letters provided explanatory language that clarified the circumstances under which interest and other charges would accrue. *Lox*, 689 F.3d at 824 (quoting *Taylor*, 365 F.3d at 574) (explaining that interest may accrue as "*specified in your contractual agreement with the original creditor.*") (emphasis added in *Lox*). The language in *Taylor* was also different from *Miller* language in

9

another important respect.  Unlike the *Miller* language, which begins by referencing the balance "as of the date of this letter," the letters in *Taylor* simply provided notice that the accounts may accrue interest or other charges pursuant to the terms of the contract with the original creditor. *Taylor*, 365 F.3d at 574, 575.[4]  Thus, the *Taylor* letters avoided misleading consumers because 1) the accounts were in fact potentially subject to interest; 2) the letters explained that any additional charges would be based on the underlying contractual terms; and 3) the letters themselves excised the "as of the date of this letter" language, which creates a heightened sense of immediacy.  *Taylor*, 365 F.3d at 574 (observing that the creditors "stopped adding interest, though presumably they could have continued doing so until the debts were paid."); *Lox*, 689 F.3d at 824; *Lopez-Gordillo v. Fin. Recovery Servs.*, No. 18-cv-6125, 2019 U.S. Dist. LEXIS 21519, at *9-12 (N.D. Ill. Feb. 11, 2019) (unsophisticated consumer may find "as of the date of this letter" created temporal conditions).

Thus, *Taylor* must be read alongside *Lox*, which explains that ambiguous, unexplained references to interest and other charges are likely to mislead the consumer if the debt collector is not actually authorized to seek these charges.  *Lox*, 689 F.3d at 823-24 ("If CDA's dunning letter stated that attorney fees could be awarded *if* Lox's agreement with Dr. Baylor provided for such fees, then *Taylor* would be an apt comparison, but this language is not present.") (emphasis in original).  Indeed, *Lox* distinguished *Taylor*, in part, because "it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes

---

[4] *Taylor* was a combined appeal addressing two different letters with similar but slightly different language.  One letter stated that the "account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." *Taylor*, 365 F.3d at 574.  The other letter stated that "your account balance may be periodically increased due to the addition of accrued interest or charges as provided in your agreement with your creditor." *Taylor*, 365 F.3d at 575.

cannot come to pass." *Lox*, 689 F.3d at 825 (citing *Ruth*, 577 F.3d at 801; *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)).

Following *Lox*, the Seventh Circuit specifically held that the *Miller* language in *Boucher* was deceptive because the references to "late charges and other charges" in the dunning letter's *Miller* language could "reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake," and "debt collectors are required to tailor boilerplate language to avoid ambiguity." *Boucher*, 880 F.3d at 370. Thus, the Seventh Circuit held in *Boucher* that using *Miller* language is inaccurate when the debt collector is actually collecting a fixed amount. *See Boucher*, 880 F.3d at 370 (quoting *Ruge v. Delta Outsource Grp., Inc.*, No. 15-cv-10865, 2017 U.S. Dist. LEXIS 35047, at *6 (N.D. Ill. Mar. 13, 2017)). Following *Boucher*, the Seventh Circuit reiterated that a debt collector violates the FDCPA when its dunning letters "imply that the debt collector may or will do something it has no authority to do." *Dunbar v. Kohn Law Firm*, 896 F.3d 762, 766 (7th Cir. 2018).[5]

This case is essentially similar to *Lox* and *Boucher*. Weiner's form letters suggest that interest and other charges are accruing "from day to day" even though Weiner had no authority or intention to add interest or other charges when it mailed the letter, and Weiner does not add

---

[5] The dunning letter in *Dunbar* offered to settle the debt and further explained that the "settlement may have tax consequences." *Dunbar*, 896 F.3d at 764. The Seventh Circuit affirmed dismissal, explaining that the language in *Dunbar* "simply warns that a settlement 'may' have tax consequences; it does not say or imply that the debt collector or a third party may take an action against the debtor." *Dunbar*, 896 F.3d at 767 n.3. The Seventh Circuit further explained that the outcome was grounded in the non-self-executing nature of "tax consequences," and observed that the outcome might have been different if the dunning letter actually implied it would itself report the settlement to the IRS. *Dunbar*, 896 F.3d at 765 n.2.

The Seventh Circuit expressly found in *Boucher* that—unlike the "tax consequences" language in *Dunbar*—the *Miller* language that Weiner used here is not self-executing because it "can reasonably be interpreted to imply" that the debt collector will actually seek interest and other charges.

11

interest or late charges to accounts like Plaintiff's as a matter of course.  Indeed, Weiner does not even argue that it had any right to seek any interest or other charges until after judgment was entered, and Weiner's own letters expressly state that Plaintiff's account had not even been reviewed by an attorney when Weiner mailed its letters.

2. **Weiner's letter is deceptive and misleading because its modified *Miller* language suggests the debt is accruing interest and other charges even though these charges could not accrue until after judgment was entered.**

Weiner's letter falsely threatens the unsophisticated consumer that the debt is accruing interest and other charges even though Weiner cannot, and does not, actually seek these charges until after judgment is entered.  Considering that Weiner's letter expressly advises the consumer that the account has not even been reviewed by an attorney, the unqualified reference to "interest and other charges that may vary from day to day" is deceptive and misleading.

As in *Lox* and *Boucher*, Weiner's form letters reference charges that are not actually accruing.  And, although Weiner argues it is "legally entitled to, and routinely does, collect post judgment interest[,]" (Def.'s Br. at 10), this argument is a red herring.  Weiner is obviously not "legally entitled to" post-judgment interest or charges *in this case* because judgment has not been entered, Plaintiff has not been sued, and no attorney at Weiner has even reviewed the account to determine whether or not to initiate litigation to attempt to collect an alleged unsecured debt in an amount of less than $500.  *Boucher*, 880 F.3d at 370 (*Miller* language was deceptive because the representation that "the amount of the debt might change because of interest was not in this particular case.") (quoting *Ruge*, 880 F.3d at 370); *see also, e.g., Evory*, 505 F.3d at 775 (explaining that debt collectors "naturally are averse to instituting actual collection proceedings for the often very modest sums involved in the consumer debt collection business[.]").  Indeed,

the dunning letter does not explain that these charges cannot and will not accrue until after judgment is entered, and in fact plainly states just the opposite, that interest and other charges "may vary from day to day." (Compl., Ex. A).  The representation that these charges "may vary from day to day" is plainly false because Defendant had no right or intention to add interest or other charges when it mailed its letter.  *See, e.g., Boucher*, 880 F.3d at 370 (citing *Ruge*, 2017 U.S. Dist. LEXIS 35047); *see also Veach*, 316 F.3d at 693.  The alleged debt in this instance arose from a residential tenancy and—unlike a credit card debt pursuant to which a contractual interest rate applies, *see Taylor*, 365 F.3d at 574—Weiner had no contractual basis for assessing interest charges here.

In fact, the Seventh Circuit explicitly rejected Weiner's argument that its modified *Miller* language is not misleading because Weiner collects post-judgment interest on debts that have actually been reduced judgment in both *Lox* and *Boucher*.  For example, in *Lox*, the Seventh Circuit explained that a debt collector could not avoid liability by arguing "that its letter was a form letter, and that it was not distinguishing between debtors that have contracts providing for attorney fees and debtors without such contracts, thus making it true that, in relation to *all* debtors, attorney fees *could* be applied." *Lox*, 689 F.3d at 825.  It reiterated this position in *Boucher*, explaining that "collectors are required to tailor boilerplate language to avoid ambiguity." *Boucher*, 880 F.3d at 370.  The same reasoning applies here—Weiner cannot hide behind the argument that it is using a form letter and does not distinguish between debts that have been reduced to judgment and debts that have not.

Ultimately, Weiner's argument basically boils down to contending that referencing interest and other charges was not misleading because interest and other charges actually accrue

13

the dunning letter does not explain that these charges cannot and will not accrue until after judgment is entered, and in fact plainly states just the opposite, that interest and other charges "may vary from day to day." (Compl., Ex. A).  The representation that these charges "may vary from day to day" is plainly false because Defendant had no right or intention to add interest or other charges when it mailed its letter.  *See, e.g., Boucher*, 880 F.3d at 370 (citing *Ruge*, 2017 U.S. Dist. LEXIS 35047); *see also Veach*, 316 F.3d at 693.  The alleged debt in this instance arose from a residential tenancy and—unlike a credit card debt pursuant to which a contractual interest rate applies, *see Taylor*, 365 F.3d at 574—Weiner had no contractual basis for assessing interest charges here.

In fact, the Seventh Circuit explicitly rejected Weiner's argument that its modified *Miller* language is not misleading because Weiner collects post-judgment interest on debts that have actually been reduced judgment in both *Lox* and *Boucher*.  For example, in *Lox*, the Seventh Circuit explained that a debt collector could not avoid liability by arguing "that its letter was a form letter, and that it was not distinguishing between debtors that have contracts providing for attorney fees and debtors without such contracts, thus making it true that, in relation to *all* debtors, attorney fees *could* be applied." *Lox*, 689 F.3d at 825.  It reiterated this position in *Boucher*, explaining that "collectors are required to tailor boilerplate language to avoid ambiguity." *Boucher*, 880 F.3d at 370.  The same reasoning applies here—Weiner cannot hide behind the argument that it is using a form letter and does not distinguish between debts that have been reduced to judgment and debts that have not.

Ultimately, Weiner's argument basically boils down to contending that referencing interest and other charges was not misleading because interest and other charges actually accrue

13

after judgment is entered. But this argument presupposes that Weiner has been retained to file suit and a judgment will be entered against Plaintiff. Moreover, a collection agency cannot attempt or threaten to collect post-judgment interest, court costs, or statutory penalties until *after* judgment is entered against the consumer. *Veach*, 316 F.3d at 693. The debt collector in *Veach* stated that the consumer, who allegedly wrote a bad check to the creditor, owed a statutory treble damages penalty and an indeterminate amount of court costs and attorneys' fees before judgment was actually entered. *Veach*, 316 F.3d at 691. Even though the small claims court ultimately entered judgment for treble damages, costs, and attorneys' fees, the Seventh Circuit found it was improper to attempt to collect these amounts before judgment was entered. *Veach*, 316 F.3d at 691, 693. Notably, *Veach* explicitly analyzed the *Miller* language, and observed that it is meant to "prevent confusion by debtors for whom the 'exact amount due' is a **constantly shifting target** due to accruing interest and accumulating unpaid charges." The Seventh Circuit further observed that the *Miller* language deliberately does not include "any mention of court costs, attorney's fees, or other penalties which may be imposed by statute." *Veach*, 316 F.3d at 693 (emphasis added); *see also Derosa v. Comput. Credit, Inc.*, 295 F. Supp. 3d 290, 299 (E.D.N.Y. 2018) ("Warnings about unaccrued interest and/or fees contingent upon future events (such as litigation) could easily confuse debtors as to the sum they owe, or might owe in the future."). Thus, the Seventh Circuit in *Veach* explained that *Miller* language is not meant to encompass post-judgment remedies until *after* the debt has been reduced to judgment.

As explained in *Lox* and *Boucher*, it is improper for Weiner to imply that it may collect interest and other charges when it was not actually entitled to those charges. And, as explained in *Veach*, it is likewise improper for Weiner to assume it is entitled to post-judgment interest and

14

charges on Plaintiff's account when there is no judgment in place, no collections action had been filed, and no attorney had even reviewed Plaintiff's account let alone made a decision to file a collections lawsuit. The suggestion that interest and other charges "may vary day to day" even though Weiner does not even argue that it can seek interest or other charges until after judgment is entered is especially misleading, and sets this case far apart from a case like *Taylor*, where the debt collector explained that it may seek contractual interest. *Derosa*, 295 F. Supp. 3d at 299 ("Warnings about unaccrued interest and/or fees contingent on future events (such as litigation) could easily confuse debtors as to the sum they owe, or might owe in the future."); *Spurlock*, 2018 U.S. Dist. LEXIS 70755, at *8 ("Defendants had no obligation to inform Plaintiff that *if* it were to file a lawsuit against her, it would seek prejudgment interest, court costs and/or other statutory penalties. Indeed, had they done so, they would have run afoul of the FDCPA.") (citing *Veach*, 316 F.3d at 693); *see also Wilder,* 2016 U.S. Dist. LEXIS 168440, at *13; *Toction v. Eagle Accounts Group, Inc.*, No. 14-cv-689, 2015 U.S. Dist. LEXIS 1723, at * 7-8 (S.D. Ind. Jan. 8, 2015); *Ruge*, 2017 U.S. Dist. LEXIS 35047, at *8-9; *Knepp v. Huffman*, No. 17-cv-282, 2018 U.S. Dist. LEXIS 167615, at *9-10 (N.D. Ind. Sept. 28, 2018); *see also, Safdieh v. P & B Capital Grp., LLC*, No. 14-cv-3947, 2015 U.S. Dist. LEXIS 61680, at *12-15 (D.N.J. May 12, 2015).

### B. *Washington* **is cited completely out-of-context, and has no application here.**

Washington is unpersuasive for three reasons, and this Court should provide no deference or consideration to its outcome here. Indeed, the district court in *Washington* evaluated the dunning letter under a different standard, at a different procedural posture, and in the context of completely different facts. Any one of these issues is alone dispositive as to whether *Washington*

15

applies here, and Weiner's briefing does not discuss or even mention any of them. In context, the case provides no support for Weiner's contention.

First, unlike the letter Weiner mailed to Plaintiff here, the letter in *Washington* was mailed to the consumer's lawyer instead of the consumer, and thus the court did not evaluate the *Washington* letter under the unsophisticated consumer standard. Although the "unsophisticated consumer" standard usually applies to FDCPA claims, this standard "is inappropriate for judging communications with lawyers, just as it is inappropriate to fix a physician's standard of care at the level of that of a medical orderly." *Evory*, 505 F.3d at 774 (citations omitted). Thus, a communication directed to a consumer's lawyer rather than the consumer herself is not actionable unless it is likely to deceive a "competent lawyer." *Evory*, 505 F.3d at 774-75. And, although Weiner's briefing on the Motion to Dismiss does not discuss the "competent lawyer" standard, this was the standard in *Washington* because the letter was mailed to the consumer's attorney. *Washington*, 211 F. Supp. 3d at 1050 ("Plaintiff has failed to meet her burden to demonstrate that a competent attorney would be misled or deceived by the February 13, 2014 letter's reference to late fees."). Unlike in *Washington*, Weiner mailed its letters to Plaintiff himself, and the "unsophisticated consumer" standard applies. (Compl., ¶¶ 14, 23, <u>Exhibits A, B</u>.)

Second, unlike here, *Washington* was decided at the summary judgment stage, and the decision in *Washington* is premised at least in part on this procedural issue:

> This [*Miller* language] is not false on its face, because it does not definitively say that Defendants have a right to or will impose late fees on Debtor's balance. At most, the statement is potentially—but not plainly—deceptive or misleading, and therefore the stricter 'competent attorney' standard applies, and Plaintiff 'must come forward with evidence beyond the letter and beyond his own self-serving

16

>assertions that the letter is confusing in order to create a genuine issue of material fact for trial.

*Washington*, 211 F. Supp. 3d at 1050. Thus, *Washington* evaluated the *Miller* language from the "stricter 'competent attorney' standard," and *still* did not even find the claim ripe for dismissal on the pleadings. The debt collector was only entitled to summary judgment because the plaintiff failed to "come forward with any extrinsic evidence, such as a survey, indicating that Freedman's statement concerning late fees would be confusing to a competent attorney." *Washington*, 211 F. Supp. 3d at 1050. Here, Weiner moves to dismiss the complaint on the pleadings before Plaintiff has the opportunity to submit any extrinsic evidence.

Finally, and perhaps most importantly, *Washington* involved a completely different factual posture regarding the debt itself. Notably, the debt collector in *Washington* had obtained a default judgment against the consumer on December 17, 2013. *Washington*, 211 F. Supp. 3d at 1046. Hence, post-judgment interest and costs *were*, in fact, accruing when the debt collector in *Washington* mailed its form dunning letter two months later, on February 13, 2014. *Washington*, 211 F. Supp. 3d at 1046-47 (explaining that the amount of the debt increased from $1,035.60 to $1,102.93 between Feb. 13, 2014, and Mar. 20, 2014).[6] Thus, the district court in *Washington* found "it would be inappropriate to hold that Defendants violated §§ 1692e and 1692f where they used the precise language that the Seventh Circuit has instructed creditors to use in cases where, *as here*, the debt collector 'is trying to collect the listed balance plus the interest running on it or other charges.'" *Washington*, 211 F. Supp. 3d at 1051-52 (quoting *Chuway*, 362 F.3d at 949).

---

[6] Although the consumer in *Washington* had successfully moved the state court to vacate the underlying default judgment on March 5, 2014, the debt collector did not learn this until March 21, 2014.

17

But, unlike in *Washington*, nothing in the record suggests Weiner was actually collecting any post-judgment interest running on the debt when Weiner mailed its letter here. In fact, nothing in the record suggests there was a judgment on the debt at all. Weiner's second letter sought the same amount as its first letter even though it was mailed more than a month later. Further, Weiner's letters expressly state that no attorney at Weiner had even reviewed Plaintiff's account, let alone obtained judgment or even filed a case against Plaintiff. Again, the Seventh Circuit has explained that debt collectors are not entitled to increase the amount of the debt through addition of court costs or statutory penalties before judgment is entered "by assuming the outcome of future events." *Veach*, 316 F.3d at 694. Thus, it is certainly deceptive and unfair to seek or threaten to seek costs and other statutory remedies that cannot be owed until after judgment is entered if there has not been any decision to initiate litigation and an attorney has not even reviewed the file. *Butler v. J.R.S.-I, Inc.*, No. 15-cv-6059, 2016 U.S. Dist. LEXIS 45256, at *20-21 (N.D. Ill. Apr. 4, 2016) ("Illinois law authorizes the collection of post-judgment interest, but representing that interest was *already* due and owing at the time the state court action was filed—before judgment, and therefore before any post-judgment interest could be due—was a misrepresentation within the meaning of the FDCPA."); *see also Heling v. Creditors Collection Serv.*, No. 15-cv-1274-JPS, 2016 U.S. Dist. LEXIS 120041, at *13 (E.D. Wis. Sept. 6, 2016); *Spurlock v. Receivables Mgmt. Partners, LLC*, No. 17-cv-214, 2018 U.S. Dist. LEXIS 70755, at *6-8 (S.D. Ind. Apr. 27, 2018) (interpreting *Veach*, 316 F.3d at 693). As Judge Stadtmueller recently explained, "[t]he FDCPA requires a debt collector to accurately, *and without deceptive language*, state the amount of the debt owed." *Ozier v. Rev-1 Sols., LLC*, No. 17-cv-118, 2017 U.S. Dist. LEXIS 126017, at *6 (E.D. Wis. Aug. 9, 2017) (citing 15 U.S.C. § 1692e).

Other than *Washington*, Weiner relies on just a handful of cases, all of which are also inapposite. For example, a district court in *Tilmon v. LVNV Funding, LLC* found that the use of *Miller* language was not deceptive because the amount the debt collector sought did, in fact, actually change throughout the period during which collection occurred. No. 12-cv-734, 2014 U.S. Dist. LEXIS 11326, at *9 (S.D. Ill. Jan. 30, 2014). As already explained, *Wilder* also provides no support. 2016 U.S. Dist. LEXIS 168440, at *12-21. The debt in *Wilder* did not arise from a residential tenancy, it arose from a credit card account. *Wilder*, 2016 U.S. Dist. LEXIS 168440, at *8. The plaintiff claimed that the creditor had impliedly waived its right to charge interest before assigning the account to the defendant but the district court expressly found that "it *was* legally possible for LVNV to add interest to Plaintiff's account" pursuant to the contractual terms because the purported implied waiver of the creditor's right to interest occurred over a *ten-day* period. *Wilder*, 2016 U.S. Dist. LEXIS 168440, at *14-21. But *Wilder* is obviously inapposite here because the debt arose from a residential tenancy, and Weiner does not even argue that the creditor could add interest or "other charges" until judgment was entered. Because the referenced interest and other charges could not actually accrue here until after judgment is entered, this case is much more like the medical debts not subject to late charges and other charges in *Boucher*. Finally, *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832 (7th Cir. 2005), provides no support because the Seventh Circuit's decision in *Boucher* expressly held that "a defendant is not entitled to safe harbor protection if it provides inaccurate information." *Boucher*, 880 F.3d at 370.

Overall, Weiner's argument that *Washington* supports its contention that this case is ripe for dismissal on the pleadings is borderline frivolous. The district court in *Washington* evaluated

19

the letter under a different standard and at a different procedural posture, and its decision was grounded in a completely different factual backdrop. The other authority on which Weiner relies is similarly unavailing.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,

Dated: March 6, 2019.

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000; (414) 482-8001 (fax)
jblythin@ademilaw.com

*Counsel for Plaintiff and the Proposed Class*